678 A.2d 784

**COMMONWEALTH of Pennsylvania**

v.

**Frances Theresa DERBY, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1996.

Filed June 4, 1996.

Robert D. Glessner, York, for appellant.

Laura A. Pawloski, Assistant District Attorney, York, for Commonwealth, appellee.

Before POPOVICH, SAYLOR and EAKIN, JJ.

SAYLOR, Judge.

Where husband and wife have an equal right to occupy their home, does the wife have a duty to retreat from the home, if safe retreat be possible, rather than use deadly force against her husband, at whose hands she fears death or serious bodily injury? We conclude that she does not. Because the jury was incorrectly instructed on this point, we reverse the judgment of sentence imposed upon Appellant, Frances Derby, following her conviction of voluntary manslaughter in connection with the shooting death of her husband, Robert Derby ("Husband"), and remand for a new trial.

Husband was killed on November 1, 1993, following an altercation in the basement of the couple's home. According to Appellant, Husband threatened to kill her and then went upstairs. Appellant thought she heard Husband enter his bedroom, where she knew he kept a gun. Although she could have left the house from the basement, Appellant decided not to do so because she wanted to get her car keys, which were upstairs in the kitchen, in order to drive to a friend's house.

Accordingly, Appellant picked up a loaded revolver which Husband kept in the basement and proceeded cautiously up the stairs, cocking the gun as she went. As she came around the kitchen door, she saw Husband sitting in a chair with his hand on or near a revolver. Appellant fired six shots, killing Husband.

At Appellant's trial on homicide charges, defense counsel asked the Court of Common Pleas of York County to instruct the jury that Appellant had a duty to retreat from her home if, and only if, she had been the initial aggressor. The court rejected the request, instructing the jury instead that because Appellant and Husband had an equal right to be in their home, Appellant had a duty to retreat from the home if she knew that she could do so with complete safety. During its deliberations, the jury asked that it be furnished with a written copy of the court's instruction on the elements of self-defense. Because written jury instructions are not permitted in Pennsylvania, the court repeated the instruction orally. The jury then found Appellant not guilty of first degree or third degree murder, but guilty of voluntary manslaughter. Appellant was sentenced to five to ten years imprisonment, post-sentence motions were filed and denied, and this appeal followed.

 When presented with a claim that the trial court erred in charging the jury, we must determine whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995). In making that determination, we may not look at the challenged portion of the jury charge out of context, but must instead consider the charge in its entirety. *Id.* We "will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental." *Id.,* 539 Pa. at 606, 654 A.2d at 540.

At common law a defendant who sought to prevail on a claim of self-defense was required to demonstrate, *inter alia,* that he or she had not violated a duty to avoid the danger at

hand by retreating. *Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Collazo*, 407 Pa. 494, 180 A.2d 903 (1962); *Commonwealth v. Johnson*, 213 Pa. 432, 62 ·A. 1064 (1906). If a person was attacked in his or her home by an assailant who was not a member of the household, an exception to the general rule applied: the person attacked was not required to retreat even if retreat could be safely accomplished. *Johnston, supra* [1]; *Commonwealth v. Fraser*, 369 Pa. 273, 85 A.2d 126 (1952). If, however, the assailant was a fellow member of the household who had an equal right to be in the home, the general rule, not the exception, applied. *Fraser, supra; Johnson, supra.* In *Johnson*, the Supreme Court observed that

> [t]he judge, ... in charging the jury, stated as an essential ingredient of justifiable killing in self-defense, that the [defendant] must have reasonably believed that he had no other means of escape from death or great bodily harm....The [defendant], it is true, had a right to be in the house where he was, but so had the deceased.... Neither had any right to eject the other, and when the struggle between them took place the ordinary rules as to self-defense were alone applicable. Rights of a householder against a violent intruder have no relevancy [in such a situation].

*Id.*, 213 Pa. at 433–34, 62 A. at 1064–65. In the present case, the trial court relied on *Johnson* in charging the jury as it did.

Since June 6, 1973, the effective date of the Crimes Code, claims of self-defense have been governed by section 505 of the Crimes Code, 18 Pa.C.S.A. § 505 ("Use of force in self-protection"). For the most part, section 505 codifies the common law of Pennsylvania with regard to self-defense. *Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976); *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975). The Official Comment—1972 to section 505 explains that

1. In *Johnston,* the Supreme Court extended the no-retreat exception to include situations in which a person is attacked in his or her place of business.

[t]his section is derived from Section 3.04 of the Model Penal Code,[2] and makes no substantial change in existing law. The intent of this section is to codify existing case law pertaining to "self-defense" and to cover in a single rule the law governing the use of defensive force against both attack and in crime prevention.

With regard to self-defense when attacked in one's home, subsection 505(b) provides as follows:

(2) The use of deadly force is not justifiable . . . if:

. . . . .

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . ., except that:

(A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be[.]

18 Pa.C.S.A. § 505(b)(2)(ii)(A).

■ The Official Comment's expression of intent notwithstanding, it is immediately apparent that subsection 505(b)(2)(ii)(A), on its face, works a substantial change in the law of self-defense: no longer is a person obliged to retreat from his or her dwelling when assailed by a person who has an equal right to be there. This subsection is identical to the analogous provision of section 3.04 of the Model Penal Code, upon which section 505 was based. As explained by the American Law Institute, drafter of the Model Penal Code, in the Explanatory Note to section 3.04, the Institute considered

whether the right to stand one's ground should be preserved when the attack is by a co-dweller or co-worker. The proposal originally submitted to the Institute did not extend the exception in either instance; a wife was thus compelled to retreat from an attack by her husband in their common home (if she knew she could do so with complete

---

**2.** Section 505 of the Crimes Code had no predecessor in the now-repealed Penal Code of 1939, 18 P.S. § 4101 *et seq.* With regard to the Model Penal Code, *see infra.*

safety, of course), as was one partner from an attack by another partner at their place of work. The Institute voted [in 1958] to require retreat from attacks at one's place of work in such a context, **but not from attacks at one's dwelling.** The language of Subsection (2)(b)(ii)(A) [of section 3.04] states that position.

(Footnotes omitted; emphasis added.) Curiously, however, the summary of existing case law which is set forth in the Official Comment to subsection 505(b)(2)(ii)(A) of the Crimes Code includes the following:

A person is not required to retreat if he is attacked in his own home. *Commonwealth v. Fraser, [supra ].* But where the deceased and the defendant both had a right to be in the home where the killing occurred, the ordinary rules as to self-defense are applicable. *Commonwealth v. Johnson, [supra ].*

The Supreme Court addressed the meaning of subsection 505(b)(2)(ii)(A) in *Commonwealth v. Eberle,* 474 Pa. 548, 379 A.2d 90 (1977). The appellant in *Eberle* was convicted of voluntary manslaughter after admitting that she had stabbed to death, in her apartment, a friend who sometimes lived there. On appeal, the appellant argued that the Commonwealth had failed to disprove her claim of self-defense. Noting that the offense had occurred in 1974, after the effective date of the Crimes Code, the Supreme Court observed that "[i]n light of [the] appellant's claim we must examine section 505 of the Code which spells out the requirements for the defense of self-protection," formerly called self-defense. *Id.,* 474 Pa. at 552, 379 A.2d at 92. After quoting subsection 505(b)(2)(ii)(A), *see supra,* the Supreme Court stated that

[t]his portion of the statute represents a change from the prior law. Previously, one had no duty to retreat from one's dwelling, even if retreat could have been effectuated with safety, unless the retreat was from a member of the same household who had an equal right to be in the dwelling. *Commonwealth v. Wilkes,* 414 Pa. 246, 199 A.2d 411[, *cert. denied,* 379 U.S. 939, 85 S.Ct. 344, 13 L.Ed.2d 349 (1964) ]; *Commonwealth v. Fraser, [supra ]; Commonwealth v.*

*Johnson,* [*supra*]. In the above statute that standard is adopted for a place of work but not for a dwelling. **The actor therefore is not required to retreat from his dwelling.**

*Id.,* 474 Pa. at 553–54, 379 A.2d at 93 (emphasis added). "In addition to the above law," the court went on to say, "we must keep in mind [that] '... the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense.' " *Id.,* 474 Pa. at 554, 379 A.2d at 93, quoting *Commonwealth v. Cropper,* 463 Pa. at 537–38, 345 A.2d at 649.

Having set forth the principles of law governing its analysis, the Supreme Court then considered the evidence of record and concluded that the Commonwealth had failed to prove beyond a reasonable doubt that the appellant: 1) had not reasonably believed herself in danger of death or serious bodily injury, 2) had provoked the use of force, or 3) had been under a duty to retreat and could have retreated in complete safety. As for a duty to retreat, the court noted that "[this] requirement, as pointed out earlier, is not applicable if the [appellant] was in her dwelling," *Id.,* 474 Pa. at 556, 379 A.2d at 94, as in fact she was. Although the trial court had found that the apartment was the residence of both the appellant and the deceased, the Supreme Court determined that that finding was not supported by the record. "Under these circumstances," the court reasoned, "the appellant, who was without a doubt within her dwelling, had no duty to retreat." *Id.,* 474 Pa. at 557, 379 A.2d at 95. The court added that even if such a duty had existed, the record did not establish beyond a reasonable doubt that the appellant could have retreated in complete safety. "Having failed to negate any of the elements of the defense of self-defense," the court concluded, "the prosecution has failed to prove beyond a reasonable doubt that [the] appellant was guilty of criminal homicide." *Id.,* 474 Pa. at 558, 379 A.2d at 95. Accordingly, the court reversed the judgment of sentence and discharged the appellant.

The Commonwealth contends that the Supreme Court's interpretation of subsection 505(b)(2)(ii)(A) "was not a part of

the holding of *Eberle*" and, implicitly, that it is therefore dictum and may be disregarded. We disagree. As the Superior Court observed in *Manley v. Manley*, 193 Pa.Super. 252, 164 A.2d 113 (1960), *appeal denied,*

> [w]here a decision rests on two or more grounds, none can be relegated to the category of "obiter dictum." Nor is a decision of the court on a certain point dictum, merely because something else was found in the end which disposed of the whole matter. The fact that the same result may be reached by either of two rulings of a court does not make either "dictum."

*Id.,* 193 Pa.Super. at 263 n. 3, 164 A.2d at 119 n. 3 (citations omitted). *Accord Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 186 A.2d 24 (1962); *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830 (1986), *appeal denied,* 514 Pa. 643, 523 A.2d 1132 (1987); *Mackey v. Adamski,* 286 Pa.Super. 456, 429 A.2d 28 (1981); *Commonwealth v. Boerner,* 281 Pa.Super. 505, 422 A.2d 583 (1980). The Supreme Court's ruling in *Eberle* that the appellant had violated no duty to retreat rested on several grounds. We are without authority to relegate any of those grounds to "the inferior status of obiter dictum." *Swing,* 409 Pa. at 245, 186 A.2d at 26. Moreover, our analysis of *Eberle* is supported by the Supreme Court's subsequent opinion in *Commonwealth v. Helm,* 485 Pa. 315, 402 A.2d 500 (1979), in which the court quoted its discussion of subsection 505(b)(2)(ii)(A) in *Eberle* without giving any indication that it considered that discussion to be dictum.[3] *See Swing, supra* (noting that prior ruling, allegedly dictum, had for 29 years been followed and recognized as law by lower courts).

The Commonwealth suggests that "if a narrow reading of the *Eberle* holding is rejected, then the intent of Section 505—as evidenced in the official comments to it—is under-

---

**3.** Both *Eberle* and *Helm* were decided by five members of the Supreme Court, with three justices in the majority and two dissenting (in *Eberle* ) or concurring in the result (in *Helm* ). Because each of the opinions was joined by a majority of the participating justices, the opinions constitute binding precedent. *Commonwealth v. Mason,* 456 Pa. 602, 322 A.2d 357 (1974).

mined." The responsibility for correcting any inconsistency between a statute and its comment does not lie with the Superior Court, however, but with the legislature. Accordingly, we conclude that the trial court's instruction to the jury on the question of self-defense was erroneous.

Finally, the Commonwealth contends that the error, if any, was harmless. We disagree. The facts of the case, together with the jury's request that the self-defense instruction be given to them in writing, suggests that the instruction was crucial to the jury's verdict. Where there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). Accordingly, we reverse the judgment of sentence and remand for a new trial.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.